**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**

| | | |
|---|---|---|
| In Re: | ) | |
| **THOMAS FITZGERALD BYRNE** | ) | **Case No. 12-23553 EEB** |
| | ) | |
| **Debtor** | ) | **Chapter 11** |

**AMENDED CHAPTER 11 PLAN**

Thomas Fitzgerald Byrne, Debtor in Possession, proposes this Chapter 11 Plan pursuant to 11 U.S.C. § 1121(a) (hereinafter referred to as the "Plan") as follows:

**ARTICLE I**
**DEFINITIONS**

All capitalized terms used herein shall have the respective meanings set forth below or otherwise assigned in the Plan. All other terms shall have the meanings assigned to such terms in the Bankruptcy Code or the Bankruptcy Rules, or if none, by common usage.

"3053 4th Street Property" shall mean that property owned by the Debtor located at 3053 4th Street, Boulder, Colorado 80304.

"Administrative Expense" shall mean (i) any cost or expense of administration of Chapter 11 allowed under 11 U.S.C. § 503(b) of the Code and entitled to priority pursuant to Section 507(a)(2) of the Bankruptcy Code and (ii) all fees due under 28 U.S.C. §1930.

"Affiliate" shall mean any entity affiliated with the Debtor pursuant to 11 U.S.C. § 101(2).

"Allowed Claim" shall mean (a) an unsecured claim against the Debtor which is set forth in the Debtor's schedules other than an unsecured claim against the Debtor scheduled by the Debtor as disputed, contingent or unliquidated; (b) an unsecured claim against the Debtor which has been filed pursuant to 11 U.S.C. § 501, and with respect to which no objection to the allowance thereof has been interposed within the deadlines set forth in Article X of this Plan, or as to which any objection has been determined by Final Order; provided however, that interest accrued on or after June 27, 2012 shall not be a part of any Allowed Claim. Allowed Claims may include, but are not limited to, claims that arise from the rejection of executory contracts. "Allowed" when used with respect to a Claim that is an Administrative Claim, shall mean an Administrative Claim that has been allowed pursuant to Article V of the Plan.

"Allowed Secured Claim" shall mean an Allowed Claim secured by property of the Debtor.

1

"Bankruptcy Code" or "Code" shall mean Title 11 of the United States Code.

"Bankruptcy Court"   shall mean the United States Bankruptcy Court for the District of Colorado.

"Cash" shall mean the legal tender of the United States of America or the equivalent thereof, including bank deposits and checks.

"Chapter 11" shall mean Chapter 11 of the Code.

"Chapter 11 Case" shall mean the case commenced under Chapter 11 of the Bankruptcy Code for the Debtor.

"Claim" shall mean a claim against the Debtor as defined in 11 U.S.C. § 101(5).

"Confirmation" shall mean the entry by the Court of an order confirming the Plan in accordance with Chapter 11 of the Code. "Confirmation Order" shall mean such order; and "Confirmation Date" shall mean the date on which such order is entered.

"Contested Claim" shall mean shall mean any Claim which has been scheduled by the Debtor as disputed, contingent, or unliquidated or any Claim as to which an objection to the allowance thereof has been or will be filed. Contested Claims shall be treated under the provisions of Article X of this Plan until allowance or disallowance of such claim has been determined by a Final Order. Contested claims include claims which the Debtor believes should be objected to in whole or in part.

"Cramdown" shall mean confirmation of the Plan under the provisions of the Bankruptcy Code which permit the Court to confirm the plan even if one or more impaired classes vote against the Plan, provided the Plan is fair and equitable, the rejecting class is afforded certain treatment defined by the Bankruptcy Code, and at least one impaired class of creditors votes to accept the Plan by a two-thirds majority in the dollar amount of claims voting and a majority in number of claims voting.  In order to be fair and equitable with respect to the unsecured creditors, the Plan must either provide the rejecting class of creditors the full value of his claim or if they do not receive the full value of his claims, no junior class of creditor or interest holder may receive or retain anything on account of his claims or interests.

"Debtor" and "Debtor-in-Possession" shall mean Thomas Fitzgerald Byrne who shall also be the Reorganized Debtor.

2

"Disclosure Statement"  shall mean the Disclosure Statement describing the Plan as required to be filed by the Debtor, the proponent of the Plan, approved by the Court, and distributed to the various classes under the Plan as provided in 11 U.S.C. § 1125.

"Effective Date" shall mean the first business day after the passage of ten (10) days from the date the Confirmation Order becomes a Final Order.

"Final Order" shall mean an order or a judgment as to which the time to appeal or seek review or rehearing has expired. In the event that an appeal or petition for rehearing is filed, an order or judgment shall be final unless an Order enters granting a stay pending appeal or petition for rehearing.

"General Claims Fund" shall mean a cash fund established by the Debtor by the Effective Date and funded by the Personal Income Deposit Amount as well from the Real Property Fund. The General Claims Fund will be used to pay the Administrative, Priority and Unsecured Claims in accordance with the terms of the Plan. The General Claims Fund will be an account established at a federally insured banking institution and used for the sole purpose of complying with the Debtor's obligations under the Plan.

"Impaired"   A class of claims or interests is "impaired" in accordance with 11 U.S.C. §1124 if  the Plan alters the legal, equitable and/or contractual rights of the holders of such claims or interests.

"Insider" shall mean any Person defined in 11 U.S.C. §101(31)(B) of the Bankruptcy Code.

"Late Filed Claims" shall mean any claim filed in the Chapter 11 case after the last date set by the Bankruptcy Court for filing Claims that are not Administrative Claims.

"Litigation" shall mean any civil action pending on the Confirmation Date or commenced thereafter by the Reorganized Debtor, including any preference or avoidable actions under the Bankruptcy Code, any state or federal court proceedings, and any matters submitted to binding arbitration.

"Person" shall mean an individual, corporation, partnership, joint venture, trust, estate, unincorporated association, unincorporated organization, cooperative, limited liability company, governmental entity or political subdivision thereof, or any other legally recognized entity.

"Personal Income Monthly Deposit Amount" shall mean the amount to be contributed by the Debtor to the General Claims Fund as calculated in the attached Exhibit A.  The Personal Income Deposit Amount is calculated based upon the Debtor's projected personal income after

3

payment of projected living expenses. The Personal Income Monthly Deposit Amount is a guaranteed payment into the Plan and will not fluctuate based upon the Debtor's actual income and expenses

"Plan of Reorganization" or "Plan" shall mean the Plan of Reorganization, as it may be amended, submitted by the Debtor.

"Plan Proponent" shall mean the Debtor.

"Post-petition" shall mean anytime on or subsequent to June 27, 2012

"Pre-petition" shall mean any time prior to June 27, 2012

Priority Claim" shall mean a Claim entitled to priority in payment pursuant to Section 507(a)(2) of the Bankruptcy Code.

"Pro Rata" shall mean with respect to any claimant, the percentage which the Allowed Claim of a creditor bears to the sum of all Allowed Claims in the same class as such Allowed Claim.

"Real Property Fund" shall mean a Cash fund established by Debtor by the Effective Date of the Plan and funded by deposits of any net profits (revenues less operating expenses, reserve for maintenance and repairs) from the properties owned or managed by Thomas F. Byrne Fine Properties, including the 3053 4th Street Property, the West Colorado Avenue Property, the West Columbia Avenue Property and the Society Drive Property. The reserve for maintenance and repairs will not exceed $10,000. The payments to the Class 2, 3, 5, 6 and 7 Creditors shall be paid from the Real Property Fund. At the end of each calendar quarter following the Effective Date, the amounts remaining in the Real Property Fund (after payment of the amounts to be paid from the Real Property Fund) shall be paid into the General Claims Fund.

"Reorganized Debtor" shall mean Thomas Fitzgerald Byrne.

"Secured Claim" shall mean any Claim secured by a valid and enforceable lien against the property of the Debtor or Debtor, but only to the extent of the value of the collateral securing such Claim.

"Senior Secured Claims" shall mean claims which are secured by a lien on a property which is senior in priority.

"Society Drive Property" shall mean that property located at 200 Society Drive, Unit D, Telluride, Colorado 81435.

4

"Tax Claim" shall mean any Claim of a governmental unit for taxes entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

"Unimpaired" A class of claims or interests is "unimpaired" in accordance with 11 U.S.C. §1124 if the legal, equitable and/or contractual rights of the holders of such claims or interests are not altered under the Plan.

"Unsecured Claim" shall mean a Claim that is not secured by a valid and enforceable lien against property of the Debtor or Debtor, other than Administrative Claims and Priority Claims.

"West Colorado Avenue Property" shall mean that property owned by the Debtor located at 453 West Colorado Avenue, Telluride, Colorado 81435.

"West Columbia Avenue Property" shall mean that property owned by the Debtor located at 658 W. Columbia Avenue, Telluride, Colorado 81435.

## ARTICLE II
## CLASSIFICATION OF CLAIMS

The following is a designation of classes of Claims other than those Claims of a kind specified in Sections 507(a)(2), 507(a)(3), or 507(a)(8) of the Bankruptcy Code.

| | |
|---|---|
| Class 1 | Allowed Impaired Secured Real Property Tax Claims |
| Class 2 | Allowed Secured Claim of JP Morgan Chase Bank, arising from the first deed of trust on the West Columbia Avenue Property. |
| Class 3 | Allowed Secured Claim of Bank of America arising from the first deed of trust on the Society Drive Property. |
| Class 4 | Allowed Secured Claim of Lawson Hill Property Owners for homeowner's association fees on the Society Drive Property. |
| Class 5 | Allowed Secured Claim of Bank of America, NA arising from the first deed of trust on the West Colorado Avenue Property. |
| Class 6 | Allowed Secured Claim of Wells Fargo Bank, N.A. arising from the first deed of trust on the 3053 4th Street Property. |
| Class 7 | Allowed Secured Claim of Wells Fargo Bank, N.A. arising from |

5

the second deed of trust on the 3053 4th Street Property.

Class 8          Allowed Secured Claim of VW Credit, Inc.

Class 9          Allowed Impaired Claims of unsecured creditors of the Debtor,
                 including Allowed Impaired Claims of any taxing authority for
                 penalties not related to actual pecuniary loss.

Class 10         Allowed Impaired Claims of holders of unexpired leases or
                 executory contracts

Class 11         Late Claims

## ARTICLE III
## TREATMENT OF UNCLASSIFIED PRIORITY CLAIMS

As provided in Section 1123(a)(1) of the Bankruptcy Code, the Claims against the Debtor covered in this Article III are not classified.  The holders of such Claims are not entitled to vote on the Plan.

3.1     **Allowed Administrative Expenses..**

The holders of Allowed Administrative Claims of the type specified in Sections 507(a)(2) and 503(b) of the Bankruptcy Code claims shall receive Cash equal to the allowed amount of such Claim or a lesser amount or different treatment as may be acceptable and agreed to by particular holders of such claims.

Unless otherwise agreed by the Debtor and the claimant, Allowed Administrative Claims shall be paid from the General Claims Fund in monthly installment payments, beginning on the later of the Effective Date and the allowance of such claim.  Any holders of Allowed Administrative Claims who do not agree to such treatment or other treatment shall be paid in full on the Effective Date.

The anticipated Allowed Administrative Claims include fee Claims of professionals retained by the Debtor.

**3.2     Fees Due Under 28 U.S.C. §1930(a)(6).**

The Reorganized Debtor shall make all payments required to be made to the United States Trustee program under 28 U.S.C. §1930(a)(6) until the Chapter 11 Case is closed, converted, or dismissed.  All payments due to the United States Trustees program shall be paid

6

on the Effective Date. The United States Trustee shall thereafter be paid fees due on a quarterly basis until the Chapter 11 Case is closed converted or dismissed.

**THE DEBTOR MAY SEEK COURT APPROVAL TO CLOSE HIS BANKRUPTCY CASE PRIOR TO ENTRY OF DISCHARGE. THE DEBTOR ANTICIPATES REOPENING HIS CASE FOR GRANT OF DISCHARGE FIVE YEARS AFTER THE EFFECTIVE DATE OF THE PLAN.** Since it is anticipated that the case may be closed shortly after the Effective Date, it is not expected that the United States Trustee's Fees will be a significant obligation post-petition. Debtor is current on all Post-Petition fees due to the United States Trustee and will remain current until the case is closed.

   **3.3**     **Allowed Priority Tax Claims**.

   Individual Income Taxes

   The holders of Allowed Unsecured Priority Tax Claims of the type specified in Section 507(a)(8) of the Bankruptcy Code for income taxes shall receive 100% of their Priority Claims. Claims for penalties not related to actual pecuniary loss shall be treated under Class 9.

   The holders of Allowed Tax Claims of the type specified in Section 507(a)(8) of the Bankruptcy Code for income taxes shall receive 100% of their Priority Claims. Claims for penalties not related to actual pecuniary loss shall be treated under Class 9. The Allowed Tax Claims shall be paid through regular monthly installments in cash from the General Claims Fund over a period ending not later than June 27, 2017, (5 years after the Petition Date). The Allowed Priority Tax Claims will bear interest at the rate of three percent (3%) per annum or such other rate as the Court determines is necessary to meet the requirements of 11 U.S.C. Section 1129(a)(9)(C).

   The Debtor believes that the Allowed Unsecured Priority Tax Claims for Individual Income Taxes are the following: $47,210.24 owed to the Internal Revenue Service for tax years 2010 and 2011 and $7,482 owed to the Colorado Department of Revenue. The Debtor believes that the priority taxes have been offset by loss carrybacks.

**ARTICLE IV**
**TREATMENT OF CLAIMS UNDER THE PLAN**

**4.1**     **Class 1**          **Allowed Impaired Secured Tax Claims**

          Class 1          Allowed Impaired Secured Real Property Tax Claims.

7

Class 1is comprised of the Allowed Secured Real Property Tax Claims. The Debtor believes that there are no outstanding real property tax claims.  Any Allowed Class 1 Claim shall accrue interest at the rate of 12% per annum until paid in full.  Any Allowed  Class 1 Claim shall be paid from the General Claims Fund in  monthly installments amortized over sixty months commencing on the fifteenth day of the month following the Effective Date from the General Claims Fund until the Class 1 Claims are paid in full.  The Class 1 Claims shall retain their liens until paid in full.

**4.2    Class 2        Allowed Secured Claim of JP Morgan Chase Bank from the first deed of trust on the West Columbia Avenue Property**

Class 2 is comprised of the Allowed Secured Claim of JP Morgan Chase Bank of America, N.A. arising from first deed of trust on the West Columbia Avenue Property. The Class 2 Claim arises from a promissory note dated October 17, 2007 in the original principal amount of $1,700,000 (the "Note") secured by a Deed of Trust on the Property dated October 17, 2007 ( the "Deed of Trust"), which was recorded in the real property records of San Miguel County Colorado on October 29, 2007 at reception number 397852.  The Promissory Note matures November 1, 2037.

JP Morgan Chase Bank had commenced foreclosure proceedings prior to the filing of this Chapter 11 Case.

The Debtor and the Class 2 Creditor have reached a stipulation regarding the treatment of the Class 2 Claim.

Debtor has stipulated that the value of the West Columbia Avenue Property exceeds the Class 2 Claim and that the Class 2 Claim is over-secured.  The Class 2 Claimant has filed a proof of claim asserting an outstanding principal balance on the Class 2 Claim as of the petition date of $1,758,270.39.  Under this Plan, the Allowed Class 2 Claim shall be equal to the outstanding balance of the Promissory Note and Mortgage as of the Effective Date of the Plan, including all unpaid principal, and pre and post-petition interest, fees and charges due under the Promissory Note, less any adequate protection payments made for principal and interest during the pendency of the Chapter 11 case.

The balance of the Allowed Class 2 Claim shall be payable in equal monthly installments over thirty years with payments commencing on the 1st day of the month following the Effective Date.  The Allowed Class 2 Claim will accrue interest at the rate of 4.5% per annum.

In consideration for the agreement by the Class 2 Claimant to reduce the interest rate, the Debtor also agrees to pay the Class 2 Claimant a point equal to $20,000 payable over 12 months with the first payment due on the 1st day of the month following the Effective Date.

Payments shall commence to the Allowed Class 2 Claimant as of the first day of the month following the Effective Date and shall be paid from the Real Property Fund. The actual payment will be calculated as of the Effective Date. The Class 2 Claim shall retain its liens on the West Columbia Avenue Property.

**4.3    Class 3          Allowed Claim of Bank of America, N.A. arising from the first deed of trust on the Society Drive Property.**

Class 3 is comprised of the Allowed Secured Claim of Bank of America, N.A. arising from first deed of trust on the Society Drive Property. The Class 3 Claim arises from a promissory note dated January 21, 2009 in the original principal amount of $413,437 (the "Note") secured by a Deed of Trust on the Society Drive Property dated January 21, 2009 (the "Deed of Trust"), which was recorded in the real property records of San Miguel County Colorado on January 27, 2009 at reception number 405523. The Promissory Note matures February 1, 2039.

Bank of America commenced foreclosure proceedings prior to the filing of this Chapter 11 Case. The Class 3 Claimant has filed a proof of claim asserting an outstanding principal balance on the Class 3 Claim as of the petition date of $413,803.90

The Debtor and the Class 3 Claimant have reached a stipulation for the treatment of the Class 3 claim. The Debtor and the Class 3 Claimant have stipulated that the Allowed Class 3 Claim shall be $335,000, with adjustments to increase the Allowed Class 3 Claim for all post-petition, pre-confirmation advances for taxes and insurance, and adjustments to decrease the Allowed Class 3 Claim for any post-petition, pre-confirmation payments made by the Debtor.

The Allowed Class 3 Claim shall be payable in equal monthly installments over thirty years with payments commencing on the 1st day of the month following the Effective Date. The Allowed Class 3 Claim will accrue interest at the rate of 4.875% per annum. Current monthly payments shall commence to the Allowed Class 3 Claimant as of the first day of the month following the Effective Date and shall be paid from the Real Property Fund.

The monthly payments for principal and interest are estimated to be $1,772.85 subject to adjustments for post-petition advances and payments. The actual payment will be calculated as of the Effective Date once the value of post-petition, pre-confirmation advances and payments are determined. The Class 3 Claim shall retain its liens on the Society Drive Property. The difference between the proof of claim amount and the Allowed Class 3 Claim shall be treated as a Class 9 unsecured claim.

**4.4**   **Class 4**       **Allowed Secured Claim of Lawson Hill Property Owners for homeowner's association fees on the Society Drive Property**

Class 4 is comprised of the Allowed Secured Claim of Lawson Hill Property Owners for homeowner's association fees on the Society Drive Property. The Debtor scheduled the Lawson Hill Property Owners as a creditor for notice purposes. Debtor maintains that he is current in payments to the Lawson Hill Property Owners. Lawson Hill Property Owners has not filed a proof of claim in the case. The Debtor will continue to make timely payments of homeowners assessments outside the Plan.

**4.5**   **Class 5**       **Allowed Secured Claim of Bank of America, NA arising from the first deed of trust on the West Colorado Avenue Property.**

Class 5 is comprised of the Allowed Secured Claim of Chase arising from first deed of trust on the West Colorado Avenue. The Class 5 Claim arises from a promissory note dated May 3, 2006 in the original principal amount of $992,000 (the "Note") secured by a Deed of Trust on the West Colorado Avenue Property dated May 3, 2006 (the "Deed of Trust"),which was recorded in the real property records of San Miguel County on May 9, 2007 at Reception 383978. The Promissory Note matures June 1, 2036.

The Class 5 Claimant commenced foreclosure proceedings prior to the filing of this Chapter 11 Case. The Class 5 Claimant has filed a proof of claim asserting an outstanding principal balance on the Class 5 Claim as of the petition date of $1,072,129.80.

The Debtor and the Class 5 Claimant have reached a stipulation for the treatment of the Class 5 claim under the Plan. The Debtor and the Class 5 Claimant have stipulated that the Allowed Class 5 Claim shall be $800,000, with adjustments to increase the Allowed Class 5 Claim for all post-petition, pre-confirmation advances for taxes and insurance, and adjustments to decrease the Allowed Class 5 Claim for any post-petition, pre-confirmation payments made by the Debtor.

The Allowed Class 5 Claim shall be payable in equal monthly installments over thirty years with payments commencing on the 1st day of the month following the Effective Date. The Allowed Class 5 Claim will accrue interest at the rate of 4.5% per annum. Current monthly payments shall commence to the Allowed Class 5 Claimant as of the first day of the month following the Effective Date and shall be paid from the Real Property Fund.

The actual payment will be calculated as of the Effective Date once the value of post-petition, pre-confirmation advances and payments are determined. The Class 5 Claim

10

shall retain its liens on the West Colorado Avenue Property.  The difference between the proof of claim amount and the Allowed Class 5 Claim  shall be treated as a Class 9 unsecured claim.

**4.6      Class 6          Allowed Secured Claim of Wells Fargo Bank, N.A. arising from the first deed of trust secured by the 3053 4th Street Property.**

Class 6 is comprised of the Allowed Secured Claim of Wells Fargo Bank, N.A. arising from first deed of trust on the 3053 4th Street Property. The Class 6 Claim arises from a promissory note dated December 10, 2009 in the original principal amount of $417,000 (the "Note") secured by a Deed of Trust on the Property dated December 10, 2009 ( the "Deed of Trust"), which was recorded in the real property records of Boulder County Colorado on December 17, 2009 at reception number 03048308.  The Promissory Note matures January 1, 2040.

Wells Fargo Bank had commenced foreclosure proceedings prior to the filing of this Chapter 11 Case.

Debtor believes that the Class 6 Claim is fully secured.  The Class 6 Claimant has filed a proof of claim asserting an outstanding principal balance on the Class 6 Claim as of the petition date of $418,418.38.  The Debtor believes that the value of the collateral for such debt is $618,900 based upon sales comparables for the property.  Under this Plan, the Allowed Class 6 Claim shall be equal $418,418.38 less the adequate protection payments made for principal during the pendency of the Chapter 11 case.

The balance of the Allowed Class 6 Claim shall be payable in equal monthly installments over thirty years with payments commencing on the 1st day of the month following the Effective Date.  The Allowed Class 6 Claim will accrue interest at the rate of 4.5% per annum.  Current monthly payments shall commence to the Allowed Class 6 Claimant as of the first day of the month following the Effective Date and shall be paid from the Real Property Fund.  The Debtor estimates that the monthly payments for principal and interest will be $2,120.06 plus escrow, which is estimated to be $351.11 based upon the proof of claim filed by the Class 6 Claimant. The actual payment will be calculated as of the Effective Date once the value of adequate protection payments is determined. The Class 6 Claim shall retain its liens on the 3053 4th Street Property Property.  Any deficiency amount shall be treated as a Class 9 unsecured claim.

Should the Class 6 Claimant object to the treatment as proposed above, the Debtor requests that the Bankruptcy Court set the proper fixed interest rate based upon the current market

rate. Based upon the Bankruptcy Court's determination as to the fixed interest rate, the Debtor reserves the right to (a) accept the fixed interest rate, retain the real property and pay the secured claim over thirty years, or (b) surrender the 3053 4th Street Property to the Class 6 Claimant, subject to any unpaid real estate taxes.  Any deficiency amount arising after the surrender of the real property will be included in Class 9 of the Plan.

### 4.7    Class 7            Allowed Secured Claim of Wells Fargo Bank for second deed of trust secured by the 3053 4th Street Property.

Class 7 is comprised of the Allowed Secured Claim of Wells Fargo Bank, N.A. arising from second deed of trust on the 3053 4th Street Property. The Class 7 Claim arises from a Wells Fargo Home Equity Account Agreement and Disclosure Statement dated December 7, 2007 for a credit line in the original principal amount of $145,400 (the "Home Equity Account Agreement") secured by an Open-End Deed of Trust on the Property dated December 7, 2007 ( the "Deed of Trust"), which was recorded in the real property records of Boulder County Colorado on December 13, 2007 at reception number 2899344.

Debtor believes that the Class 2 Claim is now fully.  The Class 7 Claimant has filed a proof of claim asserting an outstanding principal balance on the Class 7 Claim as of the petition date of $149,538.11.  The Debtor believes that the value of the collateral for such debt is $618.900 based upon sales comparables for the property.  There is a senior lien held to the Class 6 Creditor in the amount of $418,418.38. Under this Plan, the Allowed Class 7 Secured Claim shall be equal to the value of the property in the amount of $475,000 less the allowed Class 6 Secured Claim.  The Debtor estimates that the Allowed Class 7 Claim will be $149,538.11.

The balance of the Allowed Class 7 Claim shall be payable in equal monthly installments over thirty years with payments commencing on the 1st day of the month following the Effective Date.  The Allowed Class 7 Claim will accrue interest at the rate of 4.5% per annum.  Current monthly payments shall commence to the Allowed Class 7 Claimant as of the first day of the month following the Effective Date and shall be paid from the Real Property Fund.  The Debtor estimates that the monthly payments for principal and interest will be $757.69. The actual payment will be calculated as of the Effective Date once the value of the Allowed Class 6 Claim is determined. The Class 7 Claim shall retain its liens on the 3053 4th Street Property.  Any deficiency amount shall be treated as a Class 9 unsecured claim.

Should the Class 7 Claimant object to the treatment as proposed above, the Debtor requests that the Bankruptcy Court set the proper fixed interest rate based upon the current market rate and the value of the 3053 4th Street Property. Based upon the Bankruptcy Court's determination as to the fixed interest rate and value of the property, the Debtor reserves the right

12

to (a) accept the fixed interest rate, retain the real property and pay the secured claim over thirty years, or (b) surrender the 3053 4th Street Property to the Class 7 Claimant, subject to any unpaid real estate taxes.  Any deficiency amount arising after the surrender of the real property will be included in Class 9 of the Plan.

**4.**8     Class **8**          Allowed Secured Claim of VW Credit, Inc.

Class 8 is comprised of the allowed secured claim of VW Credit, Inc. secured by a 2007 Audi A4,  VIN WAUKF78E07A103470.  The Class 8 claimant filed a secured claim asserting an outstanding balance as of the petition date of $13,593.99.  The Class 8 claim bears interest at an annual percentage rate of 5.49% per annum.  The monthly payments are $499.20. The term of the loan expired in October 2014 and the Debtor has completed the payments on the vehicle loan. The Debtor scheduled the value of the vehicle as of the Petition Date in the amount of $12,700.

Mr. Byrne has timely made payments on the Class 8 Claim since the Petition Date.  Mr. Byrne shall retain this motor vehicle and has completed the payments under the above-described contract.  The Class 8 Claimant shall retain its legal, equitable and contractual rights with respect to its lien on the property, except that the Class 8 Claimant may not accelerate payment of its Allowed Claim by reason of any provisions of the Plan.

**4.9     Class 9          Allowed Impaired Unsecured Claims**

Class 9 shall be comprised of creditors holding Allowed Impaired Unsecured Claims against the Debtor, including any allowed penalty Claims held by any taxing authority which are not related to actual pecuniary loss.  The Allowed Class 9 claims shall receive distributions from the General Claims Fund after payment in full of the Allowed Administrative Expense and Allowed Unsecured Tax Claims for Individual Income Taxes.  Distributions to the Allowed Unsecured Claims shall be made on a  pro rata basis.

Distributions to the Class 9 Unsecured Claims from the General Claims Fund shall be made every six months within fifteen days following the close of the month in which the sixth deposit into the General Claims Fund has been made.

**4.10   Class 10         Allowed Unimpaired claims of holders of unexpired equipment leases or executory contracts**.

Class 10 is comprised of the Claims of holders of unexpired equipment leases or executory contracts. The Debtor, prior to the hearing on confirmation, shall file motions to

assume or reject his unexpired leases and executory contracts subject to the provisions of 11
U.S.C. §365 and notice under Fed. R. Bankr. P. 2002 and 6006. If the Debtor moves to assume
his unexpired leases and executory contracts, the claims shall be treated in accordance with the
order of the Court granting the assumption of the unexpired lease or contract. Any unexpired
leases or executory contracts for which a Motion to Assume has not been filed by the Debtor
prior to the hearing on confirmation shall be deemed rejected. If the leases or executory contracts
are rejected the claims of the holders of those agreements are impaired.  Under the terms of the
lease agreements, in the event that a lease is rejected, the equipment or property will be returned
to the lessor, unless the Debtor and the lessor otherwise agree. Any Class 10 claimant asserting a
claim for damages arising from rejection of a lease shall file a proof of claim with the
Bankruptcy Court by the later of the Effective Date or thirty days after entry of the Order
granting the Motion to Reject or the claim shall be forever barred.  The claims held by holders of
rejected leases or executory contracts shall be treated as a Class 9 unsecured claims subject to the
limitations of Section 502 of the Code.

### 4.11    Class 11        Late Filed Claims.

Class 11 is comprised of all Late Filed Claims against the Debtor.  As of the date of the
filing of this Plan there were no Late Filed Claims.  Class 11 Late Filed Claims shall be
disallowed and shall receive no distribution under the Plan.

## ARTICLE V
## DEFAULT AND PLAN MODIFICATION

5.1    *Default and Right to Cure*

In the event of any default by the Reorganized Debtor of any payment to any class of
claimants arising under the terms of this Plan, Reorganized Debtor shall have forty-five (45) days
within which to cure any default in payments due under this Plan after the date of issuance of
written notice from any claim holder. Written notice shall be provided to Reorganized Debtor and
to Debtor's counsel as provided in paragraph 10.7 herein, unless written notice of substitution of
legal counsel is served upon the claim holder at least fifteen (15) days prior to the date notice is
sent.

5.2    *Failure to Cure Default*

In the event that Reorganized Debtor fails to cure any default in the requirements to make
payment under the Plan, within forty-five days from the date that written notice is sent in
compliance with paragraph 5.1, the Reorganized Debtor shall be in default under the terms of the
Plan.

14

### 5.3 *Remedies in Event of Default*

This Plan, following confirmation, constitutes a new contractual relationship between the Debtor and his creditors.  In the event of a default and failure to cure following receipt of written notice under paragraph 5.1, creditors shall be entitled to enforce all rights and remedies against the Debtor for breach of contract, the Plan of Reorganization.  Any secured creditor, whose lien rights have been retained under the Plan, asserting a breach of the Plan, will be able enforce all their rights and remedies including foreclosure under their mortgage, security agreement of other lien rights, pursuant to such documents.

### 5.4 *Plan Modification*

At any time after Confirmation of the Plan but before the completion of payments under the Plan, the Plan may be modified upon the request of the Reorganized Debtor, after notice and a hearing, only to the extent allowed by 11 U.S.C. § 1127.

## ARTICLE VI
## MEANS FOR THE IMPLEMENTATION AND EXECUTION OF THE PLAN

### 6.1 *Revesting of Assets in Reorganized Debtor*

On or about the Confirmation Date, all assets of the Bankruptcy Estate shall be re-vested in the  Reorganized Debtor free and clear of all liens, claims, and interests of creditors, equity holders, and other parties in interest, except as otherwise provided herein. After the Effective Date, the Reorganized Debtor may sell or abandon any of his assets. Specifically, the assets shall be transferred subject to any liens retained against the asset by the Class 1, 2, 3, 4, 5, 6, 7 and 8 Claimants as discussed in the treatment of these claims. The Reorganized Debtor shall not, except as otherwise provided in this Plan, be liable to repay any debts which accrued prior to the Confirmation Date.

### 6.2 *Means for Implementation*

The Debtor shall fund his Plan obligations for payments from the General Claims Fund with the Personal Income Monthly Deposit Amount and the Real Property Fund.

The Distributions from the General Claims Fund to the Allowed Administrative Expense Claim and Allowed Unsecured Tax Claims shall be made on a monthly basis by the fifteenth day of the month.  Distributions to the Class 9 Unsecured Claims from the General Claims Fund shall

be made every six months within fifteen days following the close of the month in which the sixth deposit into the General Claims Fund has been made.

6.3     *Execution of Plan*

Thirty days after the Effective Date, the Debtor shall implement his Plan of Reorganization pursuant to the terms for each class of claimants set forth above.  Debtor shall commence payments under the Plan within thirty days of the Effective Date.  On the due dates for payments set forth in Article IV above, the Reorganized Debtor shall immediately distribute the required pro rate amount to each claimant holding an Allowed Secured or Unsecured Claim and escrow the same pro rata amount to creditors holding Contested Claims as provided in Article IX herein.

6.4     *Financial Records*

The financial records of the Reorganized Debtor shall be available for review by creditors upon reasonable notice.

6.5     *Avoidance and Recovery Actions*

The Reorganized Debtor may pursue any claims or recovery actions held by the Debtor, including but not limited to recovery under 11 U.S.C. §§544, 547, 548 and 549.  The recovery from any actions, after payment of legal fees and expenses associated with such actions, shall be distributed on a pro rata basis to the Class 9 creditors. The Reorganized Debtor may abandon any claim it has against any third party if it determines that the claim is burdensome or of inconsequential value and benefit. The Reorganized Debtor is authorized to employ counsel to represent it in the litigation or any cause of action or claims held by the Debtor.

6.6     *Deposit Accounts*

All funds held by the Reorganized Debtor for distribution under the Plan shall be held in accounts which are insured or guaranteed by the United States or by a department, agency or instrumentality of the United States or backed by the full faith and credit of the United States.

6.7     *Claims Objections*

Following the Effective Date, the Reorganized Debtor may compromise objections to Claims or causes of action referred to in this Plan without notice and hearing for claims or causes of action asserted in the original amount of $50,000 or less. Settlements or compromises of any

16

claims or causes of action asserted in the amount of $50,000 or more shall be subject to notice and an opportunity for hearing under the provisions after notice in compliance with the Local Rules of Bankruptcy Procedure.

### 6.8 *Discharge*

The Reorganized Debtor shall receive a discharge to the extent permitted by 11 U.S.C. § 1141. Prior to the entry of his discharge, the Reorganized Debtor shall be entitled to seek remedies from the Court to enforce any and all provisions of the Plan under 11 U.S.C. §1141 and/or to request injunctive relief from the Court under 11 U.S.C. §105, if necessary,. Upon completion of plan payments, the Debtor will seek to reopen the case to file a motion to request entry of discharge. Notice of such motion together with an accounting of plan payments will be served upon creditors and parties in interest with an opportunity to object.

### 6.9 *Compliance with Section 524(i):*

For purposes of establishing a cause of action under 11 U.S.C. §524(i), confirmation of the plan shall impose a duty on the holders and/or servicers of claims secured by liens on real property to:

a. Apply the payments received from the Debtor to the prepetition arrearage, if any, and only to such arrearage unless the confirmed plan states otherwise;

b. To apply the post-petition mortgage payments paid directly by the debtor(s) to the oldest, post-petition month due, whether such payments are immediately applied to the loan or placed into some type of suspense account;

c. To notify the debtor(s) of any changes in the interest rate for an adjustable rate mortgage which result in changes in the monthly payment and the effective date of the adjustment;

d. To notify the debtor(s) of any change that would either increase or reduce the escrow portion of the monthly mortgage payment, the resulting changes in the monthly mortgage payment and the effective date of the adjustment.

For purposes of bankruptcy accounting and Regulation X of RESPA the pre-petition arrears will be treated as current, subject to and contingent on completion of the plan, so as to preclude imposition of any default-related fees and services based solely on any pre-petition default. This obligation will have no force or effect if the case is dismissed or converted.

### 6.10 *Reporting Requirements*

The Debtor will comply with his duty to meet the reporting requirements of the United States Trustee and will file quarterly post-confirmation reports until the case is closed, converted or dismissed.

## ARTICLE VII
## EFFECT OF CONFIRMATION

Upon Confirmation, in accordance with the provisions of 11 U.S.C. §1141(a) and (b), the provisions of this Plan shall bind the Debtor and any creditors of the Debtor, whether or not the Claim of such Person is Impaired under this Plan and whether or not such Person has accepted this Plan. Upon Confirmation, all of the property of the Debtor's estate shall be vested in the Reorganized Debtor as provided in this Plan, free and clear of all Claims, except as specifically provided in this Plan. Upon Confirmation, pending entry of discharge pursuant to 11 U.S.C. §1141(d), all creditors are bound by the provisions of this Plan and are precluded from commencing or pursuing any action against the Reorganized Debtor on account of any claim dealt with by this Plan, other than an action to enforce the provisions of this Plan.

## ARTICLE VIII
## PROVISION FOR ASSUMPTION OR REJECTION OF EXECUTORY CONTRACTS

All unexpired leases and executory contracts between the Debtor and any other party which have not prior to the Effective Date of the Plan been affirmatively assumed by the Debtor by the filing of an appropriate motion are hereby rejected.

## ARTICLE IX
## PROVISION AS TO CONTESTED CLAIMS

9.1     *Objections*

The Debtor or Reorganized Debtor may, at any time within sixty (60) days after the Effective Date file an objection to any claim which in its opinion should be objected to as improper, in whole or in part. The Bankruptcy Court shall have the authority to extend this deadline upon the filing of a motion within the provisions of Fed. R. Bankr. P. 9006. In the event that the deadline is extended, claims shall not be deemed an Allowed Claim until after the expiration of the extension. The Debtor or Reorganized Debtor may further designate claims held by creditors against whom they believe actions may be brought under Sections 544, 547, 548 or 549 of the Bankruptcy Code as Contested Claims by sending notice in writing to the Claimant within thirty (30) days after the Effective Date.

Upon the filing of such objection or service of said written notice, such claim shall be

considered a Contested Claim, and any cash or other instruments or property otherwise distributable to such creditor under this Plan shall be held by the Debtor in escrow until final disposition of the objection to the claim either by settlement or entry of a Final Order. If the claim is only contested in part, distribution shall be made to the claimant on the uncontested portion under the provisions of Article IV and the balance shall be treated as a Contested Claim under the provisions of Article IX. If the objection is overruled or denied, in whole or in part, or the claim is allowed by stipulation of the Reorganized Debtor and the claimant, such claimant shall receive the amount of cash or stock provided in this Plan to the extent of the amount of the claim finally allowed, including back installments.

9.2     *Contested Claims Escrow*

From and after the Effective Date, Reorganized Debtor shall reserve and hold for the benefit of each holder of a Contested Claim cash in an amount equal to the pro rata payments which would have been made to the holder of such contested claim if it were an Allowed Claim in an amount equal to the lesser of:  (I) the amount of the Contested Claim or (ii) the amount in which the Contested Claim shall be estimated by the Bankruptcy Court pursuant to § 502 of the Bankruptcy Code for purposes of allowance, which amount shall constitute and represent the maximum amount in which such claim may ultimately become an Allowed Claim.  No payments or distributions shall be made with respect to all or any portion of any Contested Claim pending the entire resolution thereof by Final Order.

### ARTICLE X
### MISCELLANEOUS PROVISIONS

10.1     *Retention of Jurisdiction*

The Court shall retain jurisdiction over this Chapter 11 case and related core and non-core proceedings, for the following purposes:

(a)     To hear and determine any and all objections to the allowance of Claims.

(b)     To determine any and all applications for allowances of compensation and reimbursement of expenses and any other fees and expenses authorized to be paid or reimbursed under the Code or the Plan, to the extent such claim was incurred prior to the Effective Date.

(c)     To hear and determine any and all pending applications for the rejection or assumption, or for the assumption and assignment, as the case may be, of executory contracts or unexpired leases to which the Debtor are a party, and to

hear and determine any and all claims arising therefrom.

(d)     To hear and determine any and all applications, adversary proceedings, and contested or litigated matters that may be pending on the Effective Date or any claims objections or avoidance actions instituted by the Reorganized Debtor thereafter.

(e)     To consider any modifications of the Plan, to remedy any defect or omission or reconcile any inconsistency in the Plan or in the orders of the Bankruptcy Court, including the Order of Confirmation.

(f)     To hear and determine all controversies, suits, and disputes that may arise in connection with the interpretation, enforcement, or consummation of the Plan.

(g)     To consider and act on the compromise and settlement of any claim or cause of action by or against the Debtor where the original claim or cause of action is in excess of $50,000.

(h)     To issue orders in aid of execution of the Plan as contemplated by § 1142 of the Code.

(i)     To extend the deadlines set forth in this Plan under Fed. R. Bankr. P. 9006.

(j)     To determine such other matters as may be set forth in the Order or Confirmation or which may arise in connection with the Plan or the Order of Confirmation.

10.2    *Vesting of Property*

Reorganized Debtor, subject to his obligations under this Plan, shall be vested with ownership to all property of the estate except as otherwise provided herein upon the Effective Date.

10.3    *Satisfaction of Claims*

The payment of Allowed Claims, Allowed Administrative Claims and Allowed Secured Claims shall be in exchange for all claims against the Debtor and shall, upon entry of discharge, constitute full settlement, release, discharge, and satisfaction of all such claims against the Debtor. Confirmation of the Plan shall constitute a modification of any note or obligation for which specification and treatment is provided under the Plan, as set forth in the Plan.  Any obligation or

20

note, previously in default, so modified, shall be cured as modified as of the Discharge Date.

      10.4    *Pre-Existing Causes of Action.*

      Nothing herein contained shall prevent the Reorganized Debtor from taking any action as may be necessary to the enforcement of any cause of action which may exist on behalf of the Reorganized Debtor and which may not have been enforced or prosecuted by the Reorganized Debtor prior to the Effective Date.

      10.5    *Reservation of Rights*

      The Reorganized Debtor reserves the right to modify the Plan prior to the Confirmation, and thereafter to modify the Plan in accordance with 11 U.S.C. § 1127(b) and ¶ 5.3 herein.

      10.6    *Headings*

      The headings used in the Plan are for convenience of reference only and shall not limit or in any manner affected the meaning and interpretation of the Plan.

      10.7    *Notices*

      All notices, request, demands, or other communications required or permitted in this Plan must be given in writing to the parties to be notified.  All communications will be deemed when delivered when received at the following addresses:

    (a)    To Debtor:                 With a copy to
           Thomas F. Byrne         Bonnie Bell Bond, Esq.
           P.O. Box 219            Law Office of Bonnie Bell Bond
           Telluride, Colorado 81435    5613 DTC Parkway #1200
                                          Greenwood Village, CO 80111

    (b)    To an allowed claimant, at the addresses set forth in the allowed Proof of Claim, if filed, or, if no Proof of Claim is filed, at the address set forth for the claimant in the Debtor's Schedules filed with the Bankruptcy Court.

      10.8    *Successors and Assigns*

      This Plan will be binding upon the Reorganized Debtor, any creditor affected by the Plan, his heirs, successors, assigns and legal representatives.

10.9    *Unclaimed Payments*

If a Person entitled to receive a payment or distribution pursuant to the Plan fails to negotiate a check, accept a distribution or provide a forwarding address in the event notice cannot be provided as set forth in paragraph 10.7, within one (1) year of the Effective Date, the person or entity is deemed to have released or abandoned any right to payment or distribution under the Plan.

Dated this  14th  day of July, 2015.

*/s/ Thomas F. Byrne*                            LAW OFFICE OF BONNIE BELL BOND, LLC

By*:*_____*/s/ Bonnie Bell Bond*
                    Bonnie Bell Bond, #14923
                    5613 DTC Parkway, Suite 1200
                    Greenwood Village, Colorado 80111
                    Phone:  303-770-0926Fax:  303-770-0965
                    bonnie@bellbondlaw.com
                    COUNSEL FOR THE DEBTOR IN POSSESSION

22